**08 C 1242**

**JUDGE ASPEN**
**MAGISTRATE JUDGE BROWN**

# EXHIBIT C

STATE OF ILLINOIS )
)ss
COUNTY OF KANE )

'08 L 46

IN THE CIRCUIT COURT FOR THE 16TH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

F. KEITH BROWN

KLAUS SCHUBERT )
      Plaintiff, )
)
vs. ) No.
)
AMERICAN FAMILY INSURANCE GROUP and )
AMERICAN FAMILY MUTUAL INSURANCE COMPANY )
)
      Defendant. )

## COMPLAINT AT LAW

NOW COMES the plaintiff, **KLAUS SCHUBERT**, by his attorneys, **SCHROEDER & SCHROEDER** and for his complaint against defendants, **AMERICAN FAMILY INSURANCE GROUP and AMERICAN FAMILY MUTUAL INSURANCE COMPANY**, (hereinafter referred to as **AMERICAN**) states as follows:

1. That American is a company organized in the State of Wisconsin.

2. That American is licensed to do business in the State of Illinois.

3. That American provides health insurance products to citizens of the State of Illinois.

4. That the plaintiff, Klaus Schubert is a citizen of the State of Illinois.

5. That Klaus Schubert was married to Judith M. Schubert on May 6, 1972 in Park Ridge, Cook County, Illinois.

6. That Judith M. Schubert died on May 9, 2007. (See attached death certificate marked Exhibit "A")

7. That on or about April 20, 1980 American issued a "family healthcare policy — a hospital, surgical and medical expense policy," policy number 12E 13005-01-IL to the plaintiff, Klaus Schubert and his spouse, Judith M. Schubert. (Exhibit "B")

NOTICE BY ORDER OF COURT THIS CASE IS HEREBY SET FOR CASE MANAGEMENT CONFERENCE BEFORE THE ABOVE NAMED JUDGE ON 4-14-08 , AT 9:00 FAILURE TO APPEAR MAY RESULT IN THE CASE BEING DISMISSED OR AN ORDER OF DEFAULT ...

8. That Klaus Schubert maintained said policy in force from April 20, 1980 until his 65th birthday on June 3, 2006 at which time he became eligible for medicare and Judith M. Schubert became the named insured.

9. That the policy of insurance identified as policy number 12E 13005-01-IL remained in full force and effect from April 20, 1980 until May 9, 2007 and all during this time Judith M. Schubert was an insured or named insured and entitled to the benefits of the policy.

10. That American charged a premium for said policy which was paid by the plaintiff.

11. That the policy of insurance issued by American had a maximum benefit of $100,000.00 to be applied as follows:

   " Subject to policy terms and to the deductible, if any, as shown hereon or In Policy provisions, the Company will pay the percentage of the first $500 eligible expenses as shown hereon and one-hundred percent of those remaining up to the maximum benefit, as shown hereon, **for each accident or covered sickness**." (Emphasis supplied)

12. That in July 2003 Judith M. Schubert was diagnosed with cancer with an unknown primary resulting in medical treatment and surgery for the excision of a neck mass.

13. That in 2003 and 2004 Judith M. Schubert incurred medical expenses in excess of $100,000.00 for treatment of the cancer diagnosed in 2003 which American paid its benefit limit of $100,000.00.

14. That in October 2006 Judith M. Schubert was again diagnosed with cancer which resulted in medical treatment and surgery for the excision of a mediastinal mass.

15. That in 2006 and 2007 Judith M. Schubert incurred medical expenses in excess of $100,000.00 for the treatment of the cancer diagnosed in 2006.

16. That American has refused to pay and continues to refuse to pay any expenses related to the hospitalization, surgery and medical expenses incurred as a result of the cancer treatment in 2006 and 2007.

17. That American has refused to pay the expenses referred to in paragraph 15 on the basis that the policy of insurance provides **"per condition benefits."** (See American Family Insurance Group letter dated April 24, 2007 and marked Exhibit C)

18. That the policy of insurance issued by American provides benefits for each **"covered sickness" and not "per condition."**

19. That the policy of insurance issued by American defines **"covered sickness"** as follows:

"COVERED SICKNESS means sickness (including pregnancy, subject to special limitations described herein) contracted by an insured and commencing after the policy has been in force as to such insured not less than 30 days. As regards children born to the insured while the policy is in force, covered sickness means sickness contracted and commencing while the policy is in force as to such child. All sicknesses existing simultaneously shall be considered as a single covered sickness."

20. That Judith M. Schubert was hospitalized on February 9, 2007, March 4, 2007, April 13, 2007 and received medical treatment for various different ailments and incurred medical expenses in excess of $100,000.00.

21. That the American has limited its payments to $100,000.00 on the basis that the expenses referred to in paragraph 20 were all for the same **condition.** (See American Family Insurance Group letter dated September 17, 2007 and marked Exhibit "D")

22. That each of the hospitalizations referred to in Paragraph 20 and the medical treatment received were a separate **"covered sickness"** as defined by the policy and the plaintiff is entitled to full payment according to the terms of the policy.

23. That the plaintiff, Klaus Schubert, has become liable under the Family Expense Statute (750 ILCS 65/15) for all of the medical expenses that American has refused to pay.

Wherefore the plaintiff, **KLAUS SCHUBERT**, moves the court for judgment as follows:

1. Payment of $100,000.00 for all of the expenses incurred for the treatment of the cancer diagnosed in 2006.

2. Payment of all of the medical expenses incurred from February 9, 2007 until the date of death on May 9, 2007.

3. Penalties pursuant to 225 ILCS 5/155

4. Attorneys fees pursuant to 225 ILCS 5/155

_/s/ John L. Schroeder_

John L. Schroeder   Atty. No. 2508680
Carolyn A. Schroeder
Schroeder & Schroeder
1250 Executive Place
Suite 201
Geneva, Illinois 60134
630-262-9500

# MEDICAL CERTIFICATE OF DEATH

DISTRICT NO.: 50D
REGISTERED NUMBER: 408

1. DECEASED—NAME: Judith M. Schubert
2. SEX: Female
3. DATE OF DEATH: May 9, 2007
5a. AGE-LAST BIRTHDAY (YRS): 63
5d. DATE OF BIRTH: March 2, 1944
6a. HOSPITAL OR OTHER INSTITUTION—NAME: Centegra Memorial Medical Center
6c. inpatient
4. COUNTY OF DEATH: McHenry
6b. CITY, TOWN, TWP, OR ROAD DISTRICT NUMBER: Woodstock
7. BIRTHPLACE: Chicago, IL
8a. MARRIED, NEVER MARRIED, WIDOWED, DIVORCED: Married
8b. NAME OF SURVIVING SPOUSE: Klaus Schubert
9. WAS DECEASED EVER IN U.S. ARMED FORCES?: no
10. SOCIAL SECURITY NUMBER: 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
11a. USUAL OCCUPATION: Homemaker
11b. KIND OF BUSINESS OR INDUSTRY: Own Home
12. EDUCATION: 12
13a. RESIDENCE: 14215 W. South Street
13b. CITY: Woodstock
13c. INSIDE CITY: yes
13d. COUNTY: McHenry
13e. STATE: IL
13f. ZIP CODE: 60098
14a. RACE: White
14b. HISPANIC ORIGIN: NO
15. FATHER—NAME: Walter Schrage
16. MOTHER—NAME: Lillian Brachen
17a. INFORMANT'S NAME: Klaus Schubert
17b. RELATIONSHIP: husband
17c. MAILING ADDRESS: 14215 W. South St., Woodstock, IL 60098

18. PART I.
(a) Immediate Cause: ATHEROSCLEROTIC HEART DISEASE    Approximate Interval: MANY YRS
(b) DUE TO: RHEUMATOID ARTHRITIS
PART II. Other significant conditions contributing to death:

19a. AUTOPSY: no
19b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH: 
20c. WAS CORONER OR MEDICAL EXAMINER NOTIFIED: No
20a. DATE OF OPERATION: MAY 9TH 2007
21c. HOUR OF DEATH: 1:44 P.M.
21a. I DID ATTEND THE DECEASED AND LAST SAW HIM/HER ALIVE ON (signed)
22a. SIGNATURE (signed)
22b. DATE SIGNED: 5-14-07
22c. NAME AND ADDRESS OF CERTIFIER: Honeid Baxamusa, M.D., 460 Coventry Lane, Suite 205, Crystal Lake, IL 60014
22d. ILLINOIS LICENSE NUMBER: 036-045502
23. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER:
24a. BURIAL, CREMATION, REMOVAL: Entombment
24b. CEMETERY OR CREMATORY—NAME: McHenry County Memorial Park
24c. LOCATION: Woodstock, Illinois
25a. FUNERAL HOME: M.J. Suerth Funeral Home, 6754 N. Northwest Highway, Chicago, Illinois 60631
25b. FUNERAL DIRECTOR'S SIGNATURE (signed)
25c. ILLINOIS LICENSE NUMBER: 034-011324
26a. LOCAL REGISTRAR'S SIGNATURE: Patrick McNulty by Carole Ornelas
26b. DATE FILED BY LOCAL REGISTRAR: MAY 14 2007

---

I HEREBY CERTIFY THAT the forgoing is a true and correct copy of the death record for the decedent named in Item 1, and that this record was established and filed in my office in accordance with the provisions of the Illinois Vital Records Act.

DATED: MAY 14 2007   SIGNED: Patrick McNulty

AT: Woodstock, Illinois   OFFICIAL TITLE: Registrar

The original record of this death is permanently filed with the Illinois Department of Public Health in Springfield. Local Registrars are authorized to make certifications and copies of the original record. The Illinois certification and copies of a death record by the Department of Public Health or the Local Registrar are considered as prima facie evidence of the facts therein stated.

PLAINTIFF'S EXHIBIT A

YOUR HEALTH POLICY QUICK INDEX REFERENCE——

This policy is a legal contract between you (the policyholder) and the company (American Family Mutual Insurance Company - Madison, Wisconsin). This cover sheet provides only a brief outline of some important features in your policy. This is not the insurance contract, and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company.

It is therefore important that you read your policy carefully.

| | | |
|---|---|---|
| Persons Insured | | Limitations or Reductions  5 |
| Policy Period | | Exclusions |
| Benefits | • Benefit Schedule | Maternity Benefits  6 |
| Deductibles | | Procedure for Filing and Paying Claims  7 |
| Coinsurance | | Provisions Governing Cancelation and Renewal |
| | | Grace Period |
| Benefit Provisions | • Beginning on page 3 | Reinstatement |
| Renewability to age 65 or Medicare Age | | Termination of Dependents  8 |
| Definitions | 4 | Special State Provision  9 |

|078  |802 |

AGENT
JOHN R WEINBERG
218 S MAIN ST
WAUCONDA IL  60084-1828

NON-ASSESSABLE POLICY ISSUED BY
**AMERICAN FAMILY MUTUAL INSURANCE COMPANY**
Madison, Wisconsin, herein called the Company
A MEMBER OF THE AMERICAN FAMILY INSURANCE GROUP
PLEASE READ YOUR POLICY

# family healthcare policy – a hospital, surgical, and medical expense policy

• POLICY NUMBER    | | SUPERSEDED POL. NO. - IF ANY
12E 13005-01-IL
• NAMED INSURED - ADDRESS - BIRTHDATE
SCHUBERT, KLAUS    BD 06-03-1941
435 S BARRINGTON RD
WAUCONDA IL  60084

• EFFECTIVE FROM (MO., DAY, YR.) - TO (MO., DAY, YR.)
04-29-1980 — 07-29-1980
• SPOUSE (NAME & BIRTHDATE)
SCHUBERT, JUDITH M    03-02-1944
• DEPENDENTS (NAMES & BIRTHDATES)
SCHUBERT, CHRISTINA    04-02-1974
SCHUBERT, KIMBERLIE    08-25-1975
SCHUBERT, STEPHEN K    02-15-1978

**BENEFIT SCHEDULE**

In consideration of the premium to be or already paid, or any change therein as shown hereon, this benefit schedule forms a part of the policy and replaces all other benefit schedules heretofore issued in connection with this policy. Any benefits extended hereby to additional dependents or any increased benefits provided by this benefit schedule will be effective: a. for covered injuries sustained after the effective date hereon; b. for covered sickness contracted or commencing (in Indiana, first manifested) after this amended benefit schedule has been effective not less than thirty days.

After this benefit schedule has been effective for a period of two years, no claims for increased or additional benefits provided herein shall be denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of this benefit schedule.

All policy periods shall begin and end at 12:01 A.M., standard time, at the address of the named insured as stated herein. Refer to benefit provisions section of policy for description of coverage.

Subject to policy terms and to the deductible, if any, as shown hereon or in policy provisions, the Company will pay the percentage of the first $500 eligible medical expenses as shown hereon and one-hundred percent of those remaining up to the maximum benefit, as shown hereon, for each accident or covered sickness.

Authorized Representative • Countersigned-Licensed Resident Agent

| • DEDUCTIBLE IF ANY | • PERCENTAGE PAYABLE OF NEXT $500 | • MAXIMUM BENEFIT |
|---|---|---|
| $ 50 | 80 | $ 100,000 |

• PREMIUM
Original ► $
or Add'l ► $
Return ► $

If on "X" appears here, insured must acknowledge receipt of this form by signing a copy in this space and returning it to the Company.

SIGNATURE OF INSURED _____

This policy is renewable at Company's consent as to covered adults to age 65 or to age of eligibility for Medicare if earlier (as to covered children, to age 23 or to prior marriage) subject to Company's right to change rates and to decline renewal if renewal is declined on all policies issued on this form in state in which insured resides. (See page 3.) Renewal rates are subject to increases for various attained ages. Benefits are provided to extent herein described for loss due to accidental bodily injury or to sickness subject to waiting periods herein described.

**TEN DAY RIGHT TO RETURN POLICY**
If you are not satisfied with this policy, you may return it within ten days after receipt voiding and full refund of premium.

H-2B(a)

PLAINTIFF'S EXHIBIT B

This contract is made in consideration of the application, a copy of which is attached to and made a part of this policy, and in consideration of the payment in advance of the premium specified in the Benefit Schedule.

The Company will pay eighty percent of the first $500 of eligible medical expenses in excess of the deductible amount indicated in the Benefit Schedule and 100% of the remaining eligible medical expenses, incurred by or on behalf of an insured while this policy is in force as to such insured; subject to the Maximum Benefit for each covered accident or covered sickness as shown in the Benefit Schedule; subject also to a minimum deductible amount of $200 for expenses incurred on behalf of a dependent infant under 30 days of age; and subject further to the exclusions, limitations and provisions stated in the policy.

### HOW THE DEDUCTIBLE IS APPLIED

The deductible amount shall apply separately to each sickness or injury and shall apply to the aggregate of all benefits payable under the policy. The Company reserves the right to allocate the deductible amount among the benefits payable in any manner which it may elect.

### RENEWABLE AT THE CONSENT OF THE COMPANY ON A CLASS BASIS AS STATED HEREIN

This policy is renewable to the age of eligibility for Medicare, or to age 65, whichever is earlier, by the timely payment of renewal premiums at the premium rates which are in effect at subsequent renewal dates. (However, if the Company accepts a premium for any period beyond the age limit or termination date, coverage will be provided to the end of the period for which the premium was accepted.) The Company reserves the right to decline renewal if renewal is declined on all policies issued on this form in the state in which the insured resides and to change at any time and from time to time the table of rates applicable to premiums hereafter becoming due under this policy. Rates shall be classified by attained age, sex, and rating zone in which the insured currently resides, subject to the provision captioned "Eligibility and Termination of Dependents," and shall apply to all policies heretofore or hereafter issued on this policy form. While this policy remains in force, the Company does not have the right to cancel or refuse to renew the policy, except as provided above, or to place any restrictive riders on the policy with respect to coverages already in force.

### BENEFIT PROVISIONS*

Benefits hereunder are payable only for the following expenses, which are referred to herein as "eligible medical expenses." Such expenses are those which:

1. are incurred by or on behalf of an insured as the result of a covered injury or covered sickness, and

2. are recommended by a physician and are necessary treatment, services, or accommodations, and

3. are not in excess of the fees for medical care, treatment, supplies and services which customarily are charged in the community in which the service is rendered and for the types of services and supplies utilized, and

4. are incurred for one or more of the following:
   a. hospital room, board and general nursing care, not to exceed the daily rate for a (two-bed) semi-private room (except this benefit shall be extended to include the daily charge for care in a hospital Intensive Care or Coronary Care facility);
   b. surgical procedures performed by a physician, including associated operating room or emergency room charges at the time of surgery, and including charges for medication or drugs administered at the time of surgery, and charges for laboratory fees, dressings, X-rays and other necessary services and supplies related to the surgical procedure;
   c. while the insured is confined to a hospital, medical treatment by a physician, services of radiologist, pathologist, anesthesiologist, private duty nursing service by a registered nurse, drugs, medicine, laboratory

*See General Provision Number 20—"Special State Provisions." (Wis.)

FORM H2B(a) ● ●
STOCK NO. 10490 ● ● ●

- 3 -

fees, dressings, X-ray examination and treatment, anesthesia and oxygen and administration thereof, operating room charges and other necessary services and supplies;

d. other services, supplies and treatment as follows: local ambulance service to and from a hospital; treatment by use of radium or radioactive isotopes; physical therapy; casts, splints, trusses, braces, crutches, artificial limbs or eyes; rental of wheel chair, hospital-type bed, iron lung, artificial kidney or other mechanical prosthetic equipment;

e. nursing home room and board, provided the insured shall be confined to a nursing home immediately following a period of at least seven consecutive days of hospital confinement and for the same cause, subject to a maximum benefit period of twenty days for each covered sickness or covered injury;

f. out-patient treatment of an insured (1) resulting from a covered injury and limited to those expenses incurred within twenty days of the date the first expense is incurred, or (2) involving diagnostic examination and testing occasioned by a specific physical complaint and resulting in diagnosis of a covered sickness or covered injury for which hospital confinement is commenced and corrective treatment begun within 72 hours following the examination, or (3) involving, for a period of up to 72 hours prior to a previously scheduled hospital confinement, pre-admission testing and laboratory procedures conducted by the admitting hospital in preparation for treatment of a covered sickness or covered injury; and

g. home care services and supplies as listed below when such care and services immediately follow a period of at least seven days' covered hospital confinement or a period of covered nursing home confinement, when provided by a medicare-certified home health care agency or through a hospital home care services administration, providing the attending physician shall certify such care: (1) is medically necessary and (2) will result in shortened hospital or nursing home confinement; when so certified these benefits shall include, for up to 60 days for any one illness, the following services, supplies and equipment: physicians' fees, professional nursing services, home health aide services, physical, speech, and occupational therapy services, home care coordination charges, X-ray and laboratory services, charges for medical supplies (such as dressings and catheters), and equipment (such as hospital-type beds and wheelchairs), and prescription drugs. This benefit shall not be available following maternity confinement. Care or services rendered by members of the immediate family are not compensable.

### DEFINITION OF TERMS

**NAMED INSURED** means the person named as such in the Benefit Schedule.

The unqualified word **INSURED** means the Named Insured and any Insured Dependent.

**INSURED DEPENDENT*** means any dependent named in the Benefit Schedule.

In addition to the foregoing, a dependent child born on or after the effective date of the policy automatically shall become an insured dependent at birth providing the pregnancy qualifies as a covered sickness. If the pregnancy does not so qualify, the child automatically shall become an insured dependent upon attaining ten days of age. In either case such child shall cease to be an insured dependent at the next premium due date unless, prior to that date, an application for his or her addition to the policy is submitted to the Company and he or she is specifically named in the Benefit Schedule.

**COVERED INJURY** means accidental bodily injury sustained while this policy is in force and for the treatment of which eligible medical expenses are incurred while the policy is in force. All injuries sustained by any one person in any one accident shall be considered a single covered injury.

**COVERED SICKNESS*** means sickness (including pregnancy, subject to special limitations described herein) contracted by an insured and commencing after this policy has been in force as to such insured not less than 30 days. As regards children born to the insured while the policy is in force, covered sickness means sickness contracted and commencing

*See General Provision Number 20-"Special State Provisions." (Col., Ill., Ind., Iowa, Kan., Minn., Mo., Neb., N.D., S.D., Wis.)

- 4 -

while the policy is in force as to such child. All sicknesses existing simultaneously shall be considered as a single covered sickness.

**DATE EXPENSES INCURRED** shall be considered to be the date the purchase is made or the services are performed which gave rise to the expense.

**PHYSICIAN\*** means a medical practitioner, other than the insured, legally qualified under the Medical Practices Act of his state of residence while performing within the scope of his license; including but not limited to, doctors of chiropractic, dentistry, medicine, optometry, osteopathy, podiatry and surgery.

**REGISTERED NURSE** means a graduate nurse who has been registered or licensed to practice by a state board of nurse examiners or other state authority and legally is entitled to place the letters "R.N." after his or her name.

**HOME HEALTH AIDE** means a person who provides personal health care and related hygienic and dietary services for the sick or injured but does not include persons who provide general housekeeping or home-help services.

**HOSPITAL\*** shall mean a legally constituted institution which:
1. is licensed as a hospital (if licensing is required by state statute);
2. is operated primarily for the care and treatment of sick and injured persons as in-patients;
3. has a staff of one or more licensed physicians available at all times, and facilities on the premises for performance of major surgical procedures;
4. provides 24-hour nursing service by graduate, registered nurses;
5. is NOT primarily a nursing, rest or convalescent home or similar establishment, or, other than incidentally, a place for alcoholics or drug addicts.

**HOME CARE SERVICES ADMINISTRATION** means a service provided by a hospital to coordinate and provide nursing, medical and therapeutic care under the direction of a physician for a patient discharged from a period of hospital confinement and certified by the physician for such care in the patient's home.

\*See General Provision Number 20-"Special State Provisions." (Iowa, Kan., Mo., S.D.)

**NURSING HOME** means a lawfully operated institution for providing skilled nursing care for sick or injured persons on a resident in-patient basis at the patient's expense, operating continuously under the supervision of a registered nurse, and requiring that: (1) patients be regularly attended and under the continuous personal supervision of a physician, (2) medication be given only on the order of a physician, and (3) daily medical records be maintained of each patient. It is not primarily a place for rest care or for care of the aged, those suffering psychoneurotic or mental illness, drug addicts or alcoholics.

**MEDICARE** means the Health Insurance for the Aged Act, Title XVIII of the Social Security Amendments of 1965, as then constituted or later amended.

### EXCLUSIONS

A. Medical expenses shall not be covered under this policy if such expenses are incurred for services, supplies or treatments:
   1. which are elective in nature or which are not recommended and approved by a physician;
   2. provided by or in a hospital owned or operated by a national government or by any agency thereof, unless a charge is made by such hospital which the covered person is legally required to pay;
   3. resulting from war, declared or undeclared, including armed aggression resisted by the armed forces with any country, international organization or combination of countries;
   4. for any member of the military, naval or air forces of any country (upon notice any premium or pro-rata part of a premium paid for any period of such full-time active duty will be returned to the insured);
   5. for mental disease or disorder of a psychoneurotic nature, except when confined in a hospital, as defined herein, not specializing in the treatment of mental or nervous disorders and then only for up to 30 days confinement during entire life of this policy;
   6. for injury or disease with respect to which any benefits are payable under any workmen's compensation, employers liability or occupational disease law;

- 5 -

7.* for intentionally self-inflicted injury, or suicide or attempt thereat;

8.* for injury sustained or sickness first manifested, whether or not initially diagnosed accurately, prior to the date the person on whose account such expense is incurred became an insured (this exclusion is subject to the Policy Provision "Time Limit on Certain Defenses").

B. Charges shall not be covered under this policy for:

1.* dentistry or dental X-rays except for hospital charges and charges for services of a doctor of dental surgery performed while hospital confined and then only for such charges required because of accidental injury to sound natural teeth occurring while this policy is in force;

2. cosmetic surgery, unless occasioned by accidental injury occurring while this policy is in force or by a congenital anomaly in a child born of a pregnancy which qualifies as a covered sickness;

3. eye refractions, eye glasses, hearing aids, or the fitting thereof except as occasioned by sickness or by accidental injury for which payment is otherwise made under this policy;

4. transportation or travel except for local ambulance service to and from a hospital;

5. drugs and medicines which are purchased for use while the covered person is not confined in a hospital;

6. diagnostic work when curative surgery or hospital confined curative treatment is not rendered within 72 hours; rest cure; or routine physical examination;

7. vasectomies, tubal ligations, or other operative procedures either to prevent or to facilitate conception, occurring within 365 days after the effective date of the policy as to such insured person;

*See General Provision Number 20-"Special State Provisions." (Ill., Mo.)

8.* tonsillectomy and/or adenoidectomy occurring within 365 days after the effective date of the policy as to such insured person;

9. the costs of care, services or supplies to the extent that any such charge is covered under any national, state, or other government plan which is not limited to civilian governmental employees or their families;

10. the cost of care, service or supplies for any donor of an organ for transplant except that, when both the donor and the recipient are insured hereunder, their combined eligible medical expenses are payable up to the policy limit applicable to a single covered sickness;

11. alcoholism or drug abuse, or complications thereof.

### SPECIAL LIMITATIONS APPLYING TO MATERNITY BENEFITS*

To qualify as a "covered sickness," a pregnancy must have commenced after the policy has been in force as to both the insured and spouse for more than thirty days. If, as a result of such pregnancy, the insured spouse is confined to a hospital for care and treatment, the Company will pay the eligible medical expenses in excess of the deductible amount and up to the percentage indicated in the Benefit Schedule but not to exceed the following amounts for all hospital and surgical expenses arising out of such confinement and treatment: $150.00 for miscarriage or abortion; $300.00 for normal delivery; or $500.00 for caesarean section or extrauterine pregnancy.

Complications of a covered pregnancy requiring hospital confinement beyond six consecutive days shall be treated as a regular "sickness" as to benefits payable for expenses incurred beyond the sixth day, and the Company will pay 100 percent of such eligible expenses subject to the maximum benefit.

*See General Provision Number 20-"Special State Provisions." (Ind., Minn.)

- 6 -

## GENERAL PROVISIONS

1. **ENTIRE CONTRACT; CHANGES.** This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

2. **TIME LIMIT ON CERTAIN DEFENSES.** (a) After two years from the date of issue of this policy, no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or deny a claim for loss incurred after the expiration of such two-year period. (b) No claim for loss incurred commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy. The provisions of this paragraph apply separately to each insured and insured dependent. Therefore the computation of time for purposes of this provision shall begin, as to each person insured hereunder, at the date upon which such person becomes an insured.

3. **GRACE PERIOD.** Unless the Company has mailed to the named insured at the address indicated in the policy thirty days prior to the renewal date a notice of its intention not to renew the policy, a grace period of 31 days will be granted for the payment of each premium falling due after the first premium, during which grace period the policy shall continue in force.

4. **REINSTATEMENT.** If any renewal premium is not paid within the time granted the insured for payment, a subsequent acceptance of premium by the Company or by any agent duly authorized by the Company to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate this policy; provided, however, that if the Company or such agent requires an application for reinstatement and issued a conditional receipt for the premium tendered, this policy will be reinstated upon approval of such application by the Company or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the Company has previously notified the insured in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten days after such date. In all other respects the insured and Company shall have the same rights thereunder as they had under the policy immediately before the due date of the defaulted premium, subject to any provisions endorsed hereon or attached hereto in connection with the reinstatement. Any premium accepted in connection with a reinstatement shall be applied to a period for which premium has not been previously paid, but not to any period more than 60 days prior to the date of reinstatement.

5. **NOTICE OF CLAIM.** Written notice of claim must be given to the Company within twenty days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the insured to the Company at Madison, Wisconsin, or to any authorized agent of the Company, with information sufficient to identify the insured, shall be deemed notice to the Company.

6. **CLAIM FORMS.** The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

7. **PROOF OF LOSS.** Written proof of loss must be furnished the Company at its said office in case of claim for loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall

- 7 -

not invalidate or reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

8. **TIME OF PAYMENT OF CLAIM.** Indemnities payable under this policy will be paid immediately upon receipt of due written proof of such loss.

9. **PAYMENT OF CLAIMS.** All indemnities payable under this policy will be payable to the insured. Any accrued indemnities unpaid at the insured's death will be paid to the estate of the insured. If any indemnity of this policy shall be payable to the estate of the insured, or to an insured who is not competent to give a valid release, the Company may pay such indemnity, up to an amount not exceeding $1,000, to any relative by blood or connection by marriage of the insured who is deemed by the Company to be equitably entitled thereto. Any payment made by the Company in good faith pursuant to this provision shall fully discharge the Company to the extent of such payment.

Subject to any written direction of the insured in the application or otherwise, all or a portion of any indemnities provided by this policy on account of hospital, nursing, medical, or surgical services may, at the Company's option and unless the insured requests otherwise in writing not later than the time of filing proof of such loss, be paid directly to the hospital or person rendering such services, but it is not required that the service be rendered by a particular hospital or person.

10. **PHYSICAL EXAMINATION AND AUTOPSY.** The Company at its own expense shall have the right and opportunity to examine the person of the insured or an insured dependent when and as often as it may reasonably require during the pendency of a claim hereunder and to make an autopsy in case of death where it is not forbidden by law.

11. **LEGAL ACTIONS.** No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of five years after the time written proof of loss is required to be furnished.

12. **MISSTATEMENT OF AGE.** If the age of an insured has been misstated, all amounts payable under this policy shall be such as the premium paid would have purchased at the correct age.

If, because of misstatement of the age of any covered person, the Company shall accept any premium which falls due on a date when, according to the correct age, this policy would not have been issued, or the coverage of such person would not have become effective, or the coverage under this policy would have ceased, then the liability of the Company shall be limited to the refund, upon request, of all premiums paid for the period not covered by this policy.

13. **CONFORMITY WITH STATE STATUTES.** Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the insured resides on such date is hereby amended to conform to the minimum requirements of such statutes.

### ADDITIONAL PROVISIONS

14. **PAYMENT OF PREMIUMS.** All premiums are payable in advance or within the grace period. As elected in the application herefor, premiums may be paid annually, semi-annually or quarterly in advance in accordance with the Company's premium rates in effect on the date any premium is due. The mode of premium payment may be changed on any anniversary of the effective date of this policy upon request approved by the Company at Madison, Wisconsin. The payment of any premium shall not continue this policy in force beyond the date when the next premium is due and payable, except as may be otherwise provided in the grace period provision.

15. **ELIGIBILITY AND TERMINATION OF DEPENDENTS.** Only the wife of the insured and unmarried dependent children not more than 23 years of age may become covered as dependents under this policy. Any such person, except a child born after the effective date of this policy, as

- 8 -

provided under definition of insured dependent, shall become covered as a dependent only upon written acceptance of the insured's application by the Company in accordance with its then current underwriting rules and appropriate increase in the premiums then and thereafter becoming due. Any dependent child shall cease to be an insured dependent at the end of the policy term during which he or she is married or becomes 23 years of age. However, if the Company accepts a premium for any period beyond the age limit, coverage will be provided to the end of the period for which the premium was accepted.

16. *EXTENSION OF COVERAGE FOR HANDICAPPED DEPENDENTS. As long as the policy remains in force for the named insured or spouse, an insured dependent child reaching age 23 shall continue to be an eligible dependent upon payment of the required premium, so long as he or she continues to be incapable of self-sustaining employment by reason of mental retardation or physical handicap and remains chiefly dependent upon the named insured for support and maintenance. The Company will make inquiry concerning such person no sooner than two months prior to any dependent reaching age 23. Proof of such incapacity must be furnished to the insurer by the named insured within 31 days of the child's attainment of age 23. Subsequent proof of continuing disability and dependency may be required periodically by the Company after the handicapped dependent reaches age 25, but no more frequently than at annual intervals.

17. DEATH OF INSURED DEPENDENT OR NAMED INSURED. In the event of the death of an insured dependent, premium paid to the Company on behalf of the deceased for a period subsequent to the date of such death will be refunded on the pro-rata basis. If the deceased shall be the named insured, the surviving spouse, if insured under this policy, becomes the named insured; otherwise, this policy shall terminate in its entirety on its next regular premium due date; however, if the Company accepts a premium for any period beyond the premium due date, coverage will be provided to the end of the period for which a premium has been accepted.

18. MEMBERSHIP, VOTING, ANNUAL MEETING AND PARTICIPATION. Every policyholder insured by the Company shall be a member thereof. Each member present in person or represented by proxy at any annual or special meeting of the members shall be entitled to cast one vote. The annual meeting of the members shall be held at the principal office of the Company in Madison, Wisconsin, on the first Tuesday in March at 2:00 P.M., in each year, and notice printed in each policy shall be sufficient notice of the time and place thereof. Each member shall participate in the distribution of dividends, if any are declared, to the extent and on the conditions as fixed and determined by the Board of Directors in accordance with law.

19. POLICY NON-ASSESSABLE. This policy is non-assessable.

20. SPECIAL STATE PROVISIONS.

    If the address of the insured, as indicated on the policy, is in

    **COLORADO, NEBRASKA, NORTH DAKOTA:**
    The definition of "Insured Dependent" is amended so that a child who is born after the effective date of this policy as to both parents shall become an insured dependent at birth. Such coverage shall continue beyond the renewal date next following the birth of the child only upon notification to the Company and payment of the required additional premium.

    **ILLINOIS:**
    a. Exclusion B1 is amended to read as follows:
       1. dentistry or dental x-rays except charges for services required because of accidental injury to sound natural teeth occurring while this policy is in force;
    b. The provision captioned "EXTENSION OF COVERAGE FOR HANDICAPPED DEPENDENTS" also shall pertain to the insured spouse of the named insured who precedes her husband in reaching age 65 and is not then eligible for Medicare enrollment. Also, as to

*See General Provision Number 20-"Special State Provisions." (Ill., Ind.)

both the dependent child and spouse the number of days granted for furnishing proof of incapacity is 60.

c. The definition of "Insured Dependent" is amended so that a child who is born after the effective date of this policy as to both parents shall become an insured dependent at birth. Such coverage shall continue beyond the renewal date next following the birth of the child only upon notification to the Company and payment of the required additional premium.

### INDIANA:

The provision captioned "EXTENSION OF COVERAGE FOR HANDICAPPED DEPENDENTS" also shall pertain to the insured spouse of the named insured who precedes her husband in reaching age 65 and is not then eligible for Medicare enrollment; also, as to both the dependent child and spouse the number of days granted for furnishing proof of incapacity is 60. The waiting period in Exclusion B-8 is reduced to 90 days.

The terms "contracted or commencing" are replaced by "first manifested" as regards the onset of sickness.

The definition of "Insured Dependent" and Exclusion B.2, for congenital conditions are amended so that a child who is born after the effective date of this policy as to both parents shall become an insured dependent at birth. Such coverage shall continue beyond the renewal date next following the birth of the child only upon notification to the Company and payment of the required additional premium.

### IOWA:

Item 3 of the definition of "Hospital" is amended to read as follows:

3. has a staff of one or more licensed physicians available at all times, and facilities on the premises for performance of surgical procedures;

The definition of "Insured Dependent" is amended so that a child who is born after the effective date of this policy as to both parents shall become an insured dependent at birth. Such coverage shall continue beyond the renewal date next following the birth of the child only upon notification to the Company and payment of the required additional premium.

### KANSAS:

The term "Physician" includes a certified psychologist.
The definition of "Insured Dependent" is amended so that a child who is born after the effective date of this policy as to both parents shall become an insured dependent at birth. Such coverage shall continue beyond the renewal date next following the birth of the child only upon notification to the Company and payment of the required additional premium.

### MINNESOTA:

The Special Limitations Applying to Maternity Benefits are amended to remove the requirement that both husband and wife must be insured. Such benefits as are provided for maternity, childbirth, miscarriage, or abortion apply to all insured females regardless of age or marital status.

The definition of "Insured Dependent" is amended so that a child born to an insured female shall become an insured dependent at birth and immediately eligible for the same benefits applicable to the mother, subject to notification to the Company and to the payment of the applicable additional premium at the next premium due date.

### MISSOURI:

a. The definition of "Hospital" is amended to read as follows.

HOSPITAL shall mean a legally constituted institution which:
1. is operated primarily for the care and treatment of sick and injured persons as in-patients;
2. has a staff of one or more licensed physicians available at all times, and facilities on the premises for performance of surgical procedures;
3. is NOT primarily a nursing, rest or convalescent home or similar establishment, or, other than incidentally, a place for alcoholics or drug addicts;
4. provides 24-hour nursing service by graduate, registered nurses on duty or on call.

b. Exclusion A7 is amended to read as follows.
for intentionally self-inflicted injury, or suicide, or attempt thereat while sane, or

c. Exclusion A8 is amended to read as follows.
A. Medical expenses shall not be covered under this policy if such expenses are incurred for services, supplies, or treatment:
8. for injury sustained or sickness first manifested prior to the date the person on whose account such expense is incurred became an insured

- 10 -

(this exclusion is subject to the Policy Provision "Time Limit on Certain Defenses").

d. The definition of "Insured Dependent" is amended so that a child who is born after the effective date of this policy as to both parents shall become an insured dependent at birth. Such coverage shall continue beyond the renewal date next following the birth of the child only upon notification to the Company and payment of the required additional premium.

**SOUTH DAKOTA:**
Item 4 under the definition of "Hospital" is deleted. The definition of "Physician" is amended to read: a legally qualified physician, surgeon or doctor of osteopathy, other than the insured. The definition of "Insured Dependent" is amended so that a child born after the effective date of this policy as to both parents shall become an insured dependent at birth. Such coverage shall continue beyond the renewal date next following the birth of the child only upon notification to the Company and payment of the required additional premium. The policy provision captioned **ENTIRE CONTRACT; CHANGES** is amended by changing the last sentence to read as follows: No agent has authority to change this policy or to waive any of its provisions; provided, that any rider, endorsement, or application which modifies, limits, or excludes coverage thereunder must be signed by the insured to be valid.

**WISCONSIN:**
In lieu of any other benefits which otherwise might be applicable for such illnesses the following special provisions and limits apply.
1. For the treatment of tuberculosis: a benefit equal to all costs incurred by each insured for outpatient and/or inpatient care in any facility, duly licensed to provide such care, for 90 consecutive days during the life of the policy.
2. For the treatment of kidney disease, including inpatient and outpatient care, dialysis, transplant, and donor-related expenses: a benefit equal to the incurred expenses but not to exceed $30,000 annually for each insured, and not applicable to any expenses paid or payable under Medicare.

The provisions of this policy relating to Maternity Benefits and Insured Dependents are amended so that a child who is born after the effective date of this policy shall become an insured dependent at birth, providing not only the named insured but also another member of the family, such as spouse or child, is indicated as insured on the Benefit Schedule of this policy. Such coverage shall continue beyond the renewal date next following the birth of the child only upon notification to the Company and payment of the required additional premium, subject to 60-day minimum period of coverage.

IN WITNESS WHEREOF, the American Family Mutual Insurance Company has caused this policy to be signed by its President and its Secretary at Madison, Wisconsin, and countersigned on the Benefit Schedule by a duly authorized representative of the Company.

*[signature]*
Secretary

*[signature]*
President

**This is not a complete and valid contract without an accompanying Benefit Schedule properly executed.**

- 11 -

## YOUR HEALTH POLICY QUICK INDEX REFERENCE

This policy is a legal contract between you (the policyholder) and the company (American Family Mutual Insurance Company - Madison, Wisconsin). This cover sheet provides only a brief outline of some important features in your policy. This is not the insurance contract, and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company.

**It is therefore important that you read your policy carefully.**

| | | |
|---|---|---|
| Persons Insured ⎫ | Limitations or Reductions | 5 |
| Policy Period ⎪ | Exclusions | |
| Benefits ⎬ • Benefit Schedule | Maternity Benefits | 6 |
| Deductibles ⎪ | Procedure for Filing and Paying Claims | 7 |
| Coinsurance ⎭ | Provisions Governing Cancelation and Renewal | |
| | Grace Period | |
| Benefit Provisions • Beginning on page 3 | Reinstatement | |
| Renewability to age 65 or Medicare Age | Termination of Dependents | 8 |
| Definitions 4 | Special State Provision | 9 |

A
G
E
N
T

NON-ASSESSABLE POLICY ISSUED BY
**AMERICAN FAMILY MUTUAL INSURANCE COMPANY**
Madison, Wisconsin, herein called the Company
A MEMBER OF THE AMERICAN FAMILY INSURANCE GROUP
PLEASE READ YOUR POLICY

# family healthcare policy – a hospital, surgical, and medical expense policy

- POLICY NUMBER        | | | SUPERSEDED POL. NO. - IF ANY    • EFFECTIVE FROM (MO., DAY, YR.) - TO (MO., DAY, YR.)

- NAMED INSURED - ADDRESS - BIRTHDATE        • SPOUSE (NAME & BIRTHDATE)

• DEPENDENTS (NAMES & BIRTHDATES)



## AMERICAN FAMILY INSURANCE GROUP
6000 AMERICAN PKWY • MADISON WI 53783-0001 • PHONE: (608) 249-2111

April 24, 2007

Judith Schubert
14215 W S Street
Woodstock, IL 60098 8955

Re:   Claim/Policy   K94/12E13005-01-IL
      Claimant:      Judith Schubert

Ms. Schubert,

We are in receipt of correspondence from Dr. Manjunath requesting review of your claims since October 1, 2006.

Your American Family Healthcare Policy has per condition benefits. There is a per condition deductible and maximum benefit of $100,000.00 per condition. At the time of your surgery of October 2006 medical records were obtained and reviewed along with records from 2003 to determine if this was the same condition for which benefits have been previously exhausted.

Upon receipt of Dr. Manjunath's correspondence all medical records were referred to an outside independent review board to be reviewed by an oncologist in order to determine if the condition diagnosed in October 2006 was the same condition diagnosed and treated in July 2003.

It was the opinion of the independent review board that based on both the pathology report of 2003 and the pathology report of 2006 they appear to be the same condition. Based on this information we will be maintaining our denial of services previously denied as the maximum benefit of $100,000.00 per condition have been exhausted.

If you have any additional questions regarding this denial please feel free to contact our office.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at the James R Thompson Center 100 W Randolph Street, Ste 5-570, Chicago, IL 60601-3251

Sincerely,


Mary Jensen, HIA, ALHC, MHP
Senior Health Claims Representative

Cc:   R Manjunath, MD
      3703 Doty Road, Ste 6
      Woodstock, IL 60098



PLAINTIFF'S EXHIBIT C



# AMERICAN FAMILY INSURANCE GROUP

6000 AMERICAN PKWY · MADISON WI 53783-0001 · PHONE: (608) 249-2111

September 17, 2007

Klaus Schubert
14215W S Street
Woodstock, IL 60098 8955

Re:  Claimant:     Judith Schubert
     Claim/Policy # KAN/12E13005-01-IL

Mr. Schubert,

Per our telephone conversation last week the medical records for the hospital confinements of February 9, 2007 through March 3, 2007 and March 4, 2007 through March 17, 2007 were referred to our Medical Director for review to determine if both confinements were for treatment of the same condition.

It is the opinion of our Medical Director that both hospital confinements were primarily due to the same condition, atrial fibrillation. In view of this we will be maintaining our initial processing of these bills in the same claim.

If you have additional questions or concerns regarding this information please feel free to contact our office.

Sincerely,

Mary Jensen, HIA, ALHC, MHP
Senior Health Claims Representative

PLAINTIFF'S EXHIBIT D